### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**EDWARD VINCENT DiPIETRO,**

> **Petitioner,**

**v.**                                             **Case No. 8:03-CV-2582-T-27TGW**
                                                  **Criminal Case No. 8:00-CR-13–27TGW**

**UNITED STATES OF AMERICA,**

> **Respondent.**

_____/

## ORDER

**BEFORE THE COURT** is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence

pursuant to 28 U.S.C. § 2255 (CV Dkt. 1), the Government's Response in Opposition (CV Dkt. 16)

and Petitioner's Reply thereto (CV Dkt. 17).

### Background

Petitioner was taken into custody by the Polk County Sheriff's Department, Polk County,

Florida, on October 19, 1999 (CR Dkts. 4 & 179 at 5). Petitioner was held in state custody until his

arrest on a federal drug-related charge on December 14, 1999, pursuant to a criminal complaint (CR

Dkts. 1 & 4). At the time, Petitioner was on parole/probation as a result of a 1989 conviction for

trafficking in cocaine (CR Dkt. 5). Represented by private counsel, Petitioner proceeded to trial on

July 25, 2000[1] (CR Dkt. 81). Following a three-day trial, the jury found Petitioner guilty of

---

[1] Petitioner was tried jointly with co-defendant Gregorio Lopez ("Lopez"). A third defendant, Luis Fernando Munoz ("Munoz"), was also arrested with Petitioner and Lopez. Munoz entered into a plea and cooperation agreement with the Government prior to the trial of Petitioner and Lopez. Munoz testified as a Government witness at Petitioner's trial. *See* CR Dkt. 128, p. 92

conspiracy to possess with intent to distribute cocaine[2] (CR Dkt. 86). On October 26, 2000 Petitioner was sentenced to serve a term of imprisonment of 240 months followed by a 72-month term of supervised release (CR Dkt. 99). His conviction and sentence were affirmed on direct appeal on July 30, 2002 (CR Dkt. 174). *See United States v. DiPietro*, 46 Fed. Appx. 957 (11th Cir. 2002) (Table). Petitioner filed a petition for writ of certiorari in the United States Supreme Court on October 28, 2002 which was denied on December 2, 2002. *See DiPietro v. United States*, 537 U.S. 1064 (2002), *reh'g denied*, 537 U.S. 1228 (2003). Petitioner filed the instant motion pursuant to 28 U.S.C. § 2255 on December 2, 2003[3] (CR Dkt. 181; CV Dkt. 1).

In his motion and supporting memorandum, Petitioner raises eight grounds for relief[4]:

(1)     his trial attorney rendered ineffective assistance in allowing and failing to object to the jury instructions;

(2)     his trial attorney rendered ineffective assistance in failing to challenge the Indictment;

(3)     his trial attorney rendered ineffective assistance in failing to request proof that the prosecutors had properly executed their oaths of office;

(4)     his trial attorney rendered ineffective assistance in failing to challenge the Government's jurisdiction over a "wholly state" drug crime;

(5)     his trial attorney rendered ineffective assistance in failing to call particular witnesses;

---

[2] The Indictment charged Petitioner and his co-defendant with conspiracy to possess with the intent to distribute ten (10) kilograms of powder cocaine.

[3] As outlined in its Order entered on May 6, 2004 (CV Dkt. 14), Petitioner's § 2255 motion bears an execution date of December 2, 2003 and was received by the Clerk's office on December 10, 2003. Upon consideration of the Respondent's Motion to Dismiss (CV Dkt. 11) in which the Respondent argued that the instant motion should be dismissed as untimely, the Court determined that Petitioner was entitled to application of the "mailbox rule" and his motion was deemed timely filed on December 2, 2003, the date upon which he gave his motion to his Case Manager at his institution of confinement for filing. *See Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999).

[4] Petitioner numbered and/or lettered his claims differently in his § 2255 motion. The Court has renumbered and consolidated them in an effort to address Petitioner's individual claims efficiently.

(6)     the Government engaged in prosecutorial misconduct;

(7)     the Government failed to disclose evidence favorable to the defense; and

(8)     his prior state court drug conviction in Massachusetts is unconstitutional and "dischargable" [sic] in light of a recent decision by the Massachusetts Supreme Judicial Court.

### Standard of Review

Title 28, United States Code, Section 2255 provides the framework for reviewing a federal prisoner's sentence under four circumstances: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. Collateral relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988). Generally, only constitutional claims, jurisdictional claims and claims of error so fundamental as to have resulted in a complete miscarriage of justice are cognizable in a § 2255 motion for relief. *See United States v. Addonizio*, 442 U.S. 178, 184-86, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).

### Discussion

Petitioner raises five claims of ineffective assistance of counsel. The Sixth Amendment protects a defendant's right to the effective assistance of counsel during criminal proceedings against him. To prevail on a claim of ineffective assistance of counsel, Petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner must demonstrate that his attorney's "representation fell below an objective standard of reasonableness"

considering the circumstances as they existed at the time of representation. *Id.* at 687-88. This requires him to overcome a strong presumption that his attorney's performance was within the range of competence demanded of attorneys defending criminal cases. *Id.* at 689. Second, even if Petitioner can show that counsel performed incompetently, he must also show that he was prejudiced in such a manner that, but for counsel's errors, there exists a reasonable probability that the outcome of the proceeding would have been different. *Id.* at 688, 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings. *Id.* at 694.

In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." *Van Poyck v. Fla. Dept. of Corrections,* 290 F.3d 1318, 1322 (11th Cir. 2002) *(citing Chandler*, 218 F.3d at 1315). Counsel's trial strategy cannot be second guessed, as "judicial scrutiny of counsel's performance must be highly deferential." *Chandler,* 218 F.3d at 1314 (*quoting Strickland,* 466 U.S. at 689). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). Moreover, where the record is incomplete or unclear about counsel's actions, it is presumed that counsel exercised reasonable professional judgment. As counsel's trial strategy is presumptively reasonable, the determination is not "that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not do a

4

specific act." Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Chandler,* 218 F.3d at 1314-15.

## GROUND ONE

In Ground One of his § 2255 motion, Petitioner alleges his attorney was ineffective at trial in failing to object to the jury instructions. Relying on the decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 137 L.Ed.2d 435 (2000), he contends that his attorney should have objected to an instruction wherein the Court informed the jury that it was not their task to find a specific weight of the controlled substance at issue and that his attorney's failure to do so was "woefully ineffective."[5] Petitioner further argues that his attorney failed to raise the issue of "erroneous jury instructions" on appeal.

A review of the record clearly refutes Petitioner's assertions. During trial after the parties had rested, the Court discussed the proposed jury instructions with counsel outside the presence of the jury. Petitioner's attorney, Robert A. Norgard, specifically addressed the Government's proposed instruction relating to specific drug weight as follows:

| The Court: | What says the defendant Lopez as to the government's proposed requested special jury instruction which reads, "It is not an element of the offenses charged that the government must prove a specific amount of weight, or weight, excuse me, of the controlled substance involved?" |
|---|---|
| Mr. Ferrer-Roo[6]: | Judge, I want to defer to Mr. Norgard on this issue. |

---

[5] The particular instruction Petitioner appears to challenge stated as follows:

It is not an element of the offenses charged that the government must prove a specific amount or weight of the controlled substance involved.

(CR Dkt 92).

[6] Co-defendant Gregorio Lopez was represented at trial by attorney Julio Ferrer-Roo.

| | |
|---|---|
| The Court: | All right.  Mr. Norgard. |
| Mr. Norgard: | Yes sir.  It would be my position that in this case the government is required to prove weight.  The specific indictment of this case alleges possession with intent to distribute ten kilograms of cocaine.  It's my position the government should be bound by the charging document and be required to prove what's in the charging document. |
| The Court: | Mr. Rudy, response.[7] |
| Mr. Rudy: | Your Honor, it's known in the Eleventh Circuit from the <u>United States versus Cross</u> and all the progeny following it that the weight of the drugs is not an element of the charge, and that we don't have to prove a specific weight. |
| The Court: | Well, let me ask you, in light of those cases, is it a matter of instructing the jury or matter of argument of counsel?  In a case like this, is it even necessary to prove that the substance was cocaine? |
| Mr. Rudy: | I think you have to prove that the substance was cocaine, however, the amount of cocaine does not need to be proved as long as there was cocaine.  But since I expected there was going to be argument that there was no weight, or that there would be an argument as to weight, I instructed this jury instruction, which is a perfectly proper jury instruction, which the government doesn't have to prove there was actual weight.  It's not an element of the charge, nor does it need to prove, the actual weight, just that there was cocaine. |

(CR Dkt. 167, pp. 4-6).  After further independent consideration, the Court again addressed this issue with counsel for all parties prior to finalizing the jury instructions and Petitioner's attorney reiterated his argument that the Government was bound to prove the amount of drugs alleged in the Indictment.[8]  Upon consideration of the attorneys' arguments and the Court's own research, the

_____

[7] The Government was represented at trial by John F. Rudy of the United States Attorney's Office.

[8] The Court inquired as follows:

| | |
|---|---|
| The Court: | Mr. Rudy, let me ask you from the standpoint of crystallizing this issue.  When you have an indictment that charges a specific amount of drugs, like we do here, I know you maintain, but are you confident that there's case law that supports the argument that you don't have to actually prove that amount? |

| Mr. Rudy: | Very confident, Your Honor. If this was a case that involved the distribution of cocaine, we could do two things in that indictment. We could have charged that the defendant distributed cocaine, but normally we put in what I would say is a speaking indictment. We put in that it was ten kilograms of cocaine. If this was a distribution or an attempted distribution, the elements of that case would be that defendants knew that it was cocaine, and that the defendants knowingly and willfully distributed it. That's it. Not that it was element number 3. It was an "X" amount of cocaine. So, the case law is very clear. I've used it before. I know other attorneys, even Mr. Preston, has also used it that the actual weight of the drugs is not an element of the charge unless let's [sic] been used for some type of enhancement, but it's not. |
|---|---|
| The Court: | Well, that's the [sic] Cross says. But Cross didn't deal with an indictment which alleged a specific amount. And that's what I'm exploring with you. I've got Cross, and it goes just to generic indictment, conspiracy to possess with intent to distribute without specifying an amount. |
| Mr. Rudy: | Usually, Your Honor, that jury instruction isn't given unless the defense makes some type of argument that it's not the actual amount. And then the jury's to know that the elements that they are to find is that, you know, the defendants knowingly and willfully engaged mutually engaged [sic] in a course of conduct that was unlawful, and that they did so knowingly and willfully. And if you were to prove that it's distribution or, in fact, I have intent to distribute, even if you were to argue those elements, it would be that they possessed cocaine with the intent to distribute it and they knowingly and willfully possessed cocaine. There's still no amount. It's just to go – |
| The Court: | Doesn't the amount in the context of this indictment go to the essence of the agreement as opposed to any element of the offense? |
| Mr. Rudy: | It doesn't go to an element, Your Honor. |
| The Court: | That's what I'm saying. Doesn't it go to the essence of the agreement? |
| Mr. Rudy: | Yes. |
| The Court: | As opposed to the elements of the underlying conspiracy? |
| Mr. Rudy: | It comes down to, if you're going to argue that, if you're going to make that, Your Honor, then it comes down to a sentencing issue and not really towards a jury determination. And, you know, it might go towards part of the agreement, but that would be something that if the jury found these defendants guilty, they are not going to find them guilty because of the amount of drugs. That would be determined, then, based upon a sentencing issue by pre-trial, I mean, probation. Pre-trial would determine that. |
| The Court: | Any comments, gentlemen? |
| Mr. Norgard: | Your Honor, the analogy that I would make, similar to you, most of my experience is in state courts. But Your Honor's familiar with the burglary statute under state law where they sent the government - the state is simply required to allege that an offense was committed in the dwelling where there was the unlawful entry. The government is generally not required to prove a specific offense in that context, but simply that an offense was committed. The law, however, is that where the state chooses, even though they don't have to and they go on and specifically allege an offense, then they are bound by what is in their charging document. |

7

Court granted the Government's request to include the instruction Petitioner now challenges. *See* CR Dkt. 167, p. 14.

As a threshold matter, Eleventh Circuit precedent makes clear that the specific amount of drugs is not an element of the offense for which Petitioner was charged.[9] *See United States v. Baker,* 432 F.3d 1189, 1233 (11th Cir. 2005); *United States v. Adams,* 1 F.3d 1566, 1582 (11th Cir. 1993) (Eleventh Circuit case law establishes that the quantity of drugs is not an element of controlled substances offenses) (citations omitted). To the extent Petitioner relies on the decision in *Apprendi* to support this claim, such reliance is misplaced. In a case where the defendant's sentence is at or below the statutory maximum penalty provided in 21 U.S.C. § 841(b)(1)(C)[10], *Apprendi* is not implicated. *See United States v. DiPietro,* 46 Fed. Appx. 957 (11th Cir. 2002) (Table)*; United States v. Clay,* 376 F.3d 1296, 1301 (11th Cir. 2004) (*citing United States v. Sanchez,* 269 F.3d 1250, 1268 (11th Cir. 2001) ("To repeat the oft-repeated, *Apprendi* explicitly limited its holding to facts 'that increase [ ] the penalty for a crime beyond the prescribed statutory maximum. Therefore, *Apprendi* has no effect on cases in which a defendant's actual sentence falls within the range prescribed by the statute for the crime of conviction.")). Petitioner was sentenced below the statutory

---

And so it's my position here that although as Mr. Rudy pointed out in the <u>Cross</u> case, although the government's not required to allege an amount, in this case they chose to do so, and it's my position that they are bound by it because that's what they alleged in the Indictment.

(CR Dkt. 167, pp. 9-12).

[9] Petitioner was convicted of conspiracy to possess with intent to distribute ten kilograms of cocaine pursuant to 21 U.S.C. § 846. To sustain a conviction for conspiracy to distribute narcotics, the Government must prove that: (1) an agreement existed between two or more persons to distribute the drugs; (2) the defendant at issue knew of the conspiratorial goal; and (3) he knowingly joined or participated in the illegal venture. See *United States v. Matthews,* 168 F.3d 1234, 1245 (11th Cir. 1999) (*citing United States v. Guerrero,* 935 F.2d 189, 191 (11th Cir. 1991)).

[10] Section 841(b)(1)(C) provides for a maximum term of imprisonment of thirty years for a defendant with a prior felony drug conviction. Petitioner was found to have a prior felony drug conviction from Massachusetts and was sentenced accordingly. See CR Dkt 130, pp. 17, 28, 32.

maximum sentenced of thirty years and thus *Apprendi* did not apply. *See* 21 U.S.C. § 841(b)(1)(C).

Notwithstanding, Petitioner's trial attorney clearly objected at trial to the jury instruction at issue. Contrary to Petitioner's assertion, his attorney also raised this issue on appeal to the United States Court of Appeals for the Eleventh Circuit (CV Dkt. 16, Ex. A). Thus, Petitioner's contention that his attorney was ineffective in failing to address this issue at trial and on appeal is meritless. Even assuming, *arguendo*, that any alleged failure by counsel to pursue the strategy Petitioner now describes or counsel's failure to raise the issue on appeal could somehow amount to deficient performance, he has made no showing that such actions prejudiced him in any way. Accordingly, relief on this ground will be denied. *See Strickland*, 466 U.S. at 688, 697.

## GROUND TWO

In his second claim, Petitioner asserts that his attorney was ineffective in failing to challenge the Indictment. He contends that his attorney "never once challenged either the validity, nor the correctness of the indictment." *See* CV Dkt. 2, p. 5. Again relying on *Apprendi*, Petitioner claims that his attorney was ineffective in failing to challenge the Indictment as flawed in that it did not state "the correct subsection of Title 21 U.S.C. § 841(A)(1)(b)(1)(A) [sic] of (b)(1)(C) or (b)(1)(D)" which was necessary so that he would be sentenced under a particular section of § 841 as required by *Apprendi*.[11] *See* CV Dkt. 2, p. 8. As discussed in Ground One, *supra*, *Apprendi* was not applicable

---

[11] The Indictment charged Petitioner as follows:

The Grand Jury charges:

### COUNT ONE

During and between October 11, 1999, and October 19, 1999, at Davenport, in the Middle District of Florida and elsewhere, the defendants,

GREGORIO LOPEZ; and
EDWARD VINCENT DIPIETRO

did knowingly and willfully combine, conspire and agree together and with other persons known and unknown to the

in Petitioner's case.  Accordingly, there was no basis upon which Petitioner's attorney could have

objected to the construction of the Indictment.  Counsel was not obligated to raise a frivolous issue.

*United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992); *Chandler v. Moore*, 240 F.3d 907,

917-18 (11th Cir. 2001) *(citing United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000)).

Petitioner has not demonstrated that his attorney's performance was objectively unreasonable or that

he was prejudiced in any way or that the outcome of his trial would have been different had his

attorney raised the claim he now makes.  Having failed to satisfy the *Strickland* standard, relief on

this ground of Petitioner's §2255 motion will be denied.

## GROUND THREE

In Ground Three of his motion, Petitioner claims that his attorney was ineffective in failing

to request proof that the prosecutors had properly executed their oaths of office.  He contends that

his attorney neglected to challenge the authority of United States Attorney Donna A. Bucella

("Bucella") and Assistant United States Attorney Stephen M. Kunz ("Kunz") to prosecute his criminal

case.

At the time the Indictment in the criminal case was filed on January 12, 2000, Bucella was

the United States Attorney for the Middle District of Florida.  Kunz was an Assistant United States

Attorney.  Both Bucella and Kunz, as well as Assistant United States Attorney John F. Rudy, III

("Rudy") signed the Indictment charging Petitioner.[12]  In support of his motion, Petitioner has

---

Grand Jury to possess with the intent to distribute ten (10) kilograms of powder cocaine, a Schedule II controlled
substance, contrary to Title 21, United States Code, Section 841(a)(1).
     All in violation of Title 21, United States Code, Section 846.
(CR Dkt. 20).

[12] Assistant United States Attorney John F. Rudy, III prosecuted Petitioner's criminal case. However, Petitioner
does not challenge his authority in his § 2255 motion. Accordingly, the Court addresses this claim of ineffective
assistance of counsel as it relates to the alleged failure to challenge the authority of Bucella and Kunz only.

submitted copies of the Appointment Affidavits containing the oaths of office for Bucella and Rudy.[13]  This evidence shows that Bucella executed an Appointment Affidavit as United States Attorney on September 13, 1999 before then Chief Judge Elizabeth A. Kovachevich. *See* CV Dkt. 2, Ex. B.[14]  Rudy executed an Appointment Affidavit as Assistant United States Attorney on September 26, 1999. *Id.*[15]  Thus, both Bucella and Rudy were properly appointed and sworn prior to the issuance of Petitioner's Indictment on January 12, 2000.[16]

Aside from his vague and conclusory allegations, Petitioner provides no evidentiary support for his contention that the United States Attorney or the Assistant United States Attorney lacked

---

[13] Petitioner requested Kunz's oath of office from the United States Department of Justice, Executive Office for United States Attorneys ("Executive Office") pursuant to the Freedom of Information Act/Privacy Act. *See* CV Dkt. 2, Ex. B.  In response to his request, the Executive Office advised Petitioner that Kunz had been reassigned to the Northern District of Florida and that the Executive Office would request his oath from the Northern District and provide a response under separate cover.  *See id.*  Petitioner claims that he has not received the requested information relating to Kunz's oath.

[14] Petitioner appears to premise his claim that Bucella's appointment affidavit is invalid on the fact that the date of appointment typed on the document was September 12, 1999.  The number "12" in the line entitled "date of appointment" at the top of the page is crossed out and the number "13" is written in so as to bear an appointment date of September 13, 1999.  This date coincides with date at the bottom of the page on which Judge Kovachevich signed the Appointment Affidavit.  There is nothing to indicate, nor does Petitioner provide any authority to show, that this scrivener's error at the top of the page in any way affects the document's validity.

[15] Rudy's appointment affidavit bears the date of September 26, 1999 in the line entitled "date of appointment" at the top of the page.  The verification at the bottom of the document indicates that the oath was notarized on September 27, 1999.  There is nothing to indicate, nor does Petitioner provide any authority to show, that this difference in any way affects the document's validity.

The Court notes that Petitioner has filed copies of duplicate appointment affidavits for both Bucella and Rudy. The second of Bucella's affidavits lists an appointment date of November 19, 1999.  The second of Rudy's affidavits lists an appointment date of June 12, 2000 (though the notarization bears an execution date of July 11, 2000).  Neither Petitioner nor the Respondent addresses the issue of duplicate affidavits or offers any explanation as to why Bucella and Rudy have more than one appointment affidavit on file with the Executive Office.  Notwithstanding, it is clear that as of the date of issuance of the Indictment charging Petitioner, both Bucella and Rudy had taken the requisite oath of office such that they had proper authority to carry out the prosecution of Petitioner and Lopez.

[16] To the extent that there is no evidence before the Court demonstrating the appointment or execution of the oath of office by Kunz, such matter is irrelevant because Kunz did not participate in the prosecution of Petitioner and his codefendant.  To the extent that Petitioner's claim may be read to assert that Kunz did not have authority to sign the Indictment as a threshold matter, Petitioner has not argued or presented any evidence to support such a claim.

authority to prosecute his criminal case. To the contrary, Petitioner's evidence belies his own argument. Moreover, he has failed to cite any legal authority to support his proposition that his attorney could have made a meritorious objection on this ground. Petitioner's attorney was not obligated to raise a meritless argument. *Winfield*, 960 F.2d at 974; *Chandler*, 240 F.3d at 917-18. Petitioner has not demonstrated that his attorney's performance was objectively unreasonable or that the outcome of his trial would have been different had his attorney raised the claim he now makes. Having failed to satisfy the *Strickland* standard, relief on Ground Three will be denied.

**GROUND FOUR**

In his fourth claim for relief, Petitioner asserts that his trial attorney rendered ineffective assistance in failing to challenge the Government's jurisdiction over a "wholly state" drug crime. He alleges that because he was arrested by state authorities who utilized drugs from the Polk County Sheriff's Office evidence locker to carry out the reverse sting operation in which he was arrested, the federal Government lacked the authority to prosecute him on federal drug charges. This claim lacks merit.

As a threshold matter, the evidence adduced at trial shows that the Drug Enforcement Administration ("DEA"), United States Customs Service ("Customs") and the Polk County Sheriff's Office conducted a joint investigation that led to the arrest of Petitioner and Lopez.[17] Petitioner was

---

[17] On direct examination, DEA Agent David Keiken testified as follows:

| Mr. Rudy: | What exactly was your role in investigation [sic] of Mr. DiPietro, Mr. Lopez and Mr. Munoz for the October 19, 1999 drug transaction? |
|---|---|
| Agent Keiken: | I was the DEA case agent in charge of the federal – in charge of the investigation on the federal level. |
| Mr. Rudy: | Okay. What did your investigation involve? |
| Agent Keiken: | My investigation involved coordinating the enforcement activity on October 19th with the |

charged pursuant to two federal statutes, 21 U.S. §§ 841(a)(1) and 846.  Such allegations were

sufficient to confer jurisdiction on this Court.  *See King v. United States*, 2006 WL 2850104 at * 2

(M.D. Fla. Oct. 3, 2006) (*citing United States v. Jackson*, 111 F.3d 101,102 (11th Cir. 1997), *cert.*

*denied*, 522 U.S. 878 (1997)).  He does not claim that these statutes are not federal in nature or that

the federal district court did not have jurisdiction to prosecute him under federal law.  *See* 18 U.S.C.

§ 3231 (the district courts shall have original jurisdiction, exclusive of the courts of the States, of all

offenses against the laws of the United States).  Moreover, he has presented nothing to demonstrate

that the fact of  his arrest by state law enforcement officials in any way prevents him from being

charged with federal offenses.  To the extent that his actions constituted both state and federal

offenses, he was subject to prosecution by both state and federal authorities.  *See United States v.*

*Perchitti*, 955 F.2d 674, 676, n.4 (*citing United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55

L.Ed.2d 303 (1978); *United States v. Lanza*, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314

(1922) ("dual sovereignty" doctrine provides that "an act denounced as a crime by both national and

state sovereignties is an offense against the peace and dignity of both and may be punished by

each")).

    Given that Petitioner has failed to present any evidence to support his argument that the

district court did not have jurisdiction to prosecute him for the offenses charged in the Indictment,

he has likewise failed to demonstrate any basis upon which his attorney could have raised a

meritorious objection on this ground.  It is clear that this Court had jurisdiction to prosecute

---

Polk County Sheriff's Office, and also the United States Customs Service. After the Polk
County Sheriff's Office, they basically ran the enforcement operation on that date. After that
date, I was in charge with coordinating with the prosecuting office to file federal charges
against Mr. DiPietro, Mr. Lopez and Mr. Munoz, and also to follow up on the transfer of
evidence from the Polk County Sheriff's Office to DEA.

(CR Dkt. 128, pp. 8-9).

Petitioner for the underlying federal offenses and thus there is no basis upon which the Court can conclude that Petitioner's attorney was deficient for failing to challenge the Court's jurisdiction. Moreover, Petitioner cannot establish that he was prejudiced by his attorney's failure to pursue the strategy he now suggests in hindsight. Thus, he is not entitled to relief on Ground Four.

**GROUND FIVE**

Next Petitioner claims his trial attorney rendered ineffective assistance in failing to call particular witnesses. Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams*, 709 F.2d at 1445. "Judicial scrutiny of counsel's performance must be highly deferential ⋯ a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (citations omitted).[18] In deciding an ineffectiveness claim, a court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland*, 466 U.S. at 690.

First, Petitioner alleges that his attorney was obligated to call Customs Agent Andrew K. Cho ("Cho") as a witness because Cho was responsible for "his actions including Title III wiretaps

---

[18] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

between him and co-defendant Luis Munoz."[19] Petitioner claims that had his attorney done so, Cho would have had to produce evidence that the wiretaps taken by the confidential source were both legal and legally intercepted. Petitioner further claims that his attorney was "only interested in 'breaking-down' the Government's case by establishing reasonable doubt" and that reasonable doubt could have been supported by the "potential testimony" of Cho.

As a threshold matter, Petitioner does not allege that Cho was available to testify at trial nor does he provide any indication as to what he believes the substance of Cho's testimony would have been. To the extent that he argues that Cho would have provided information relating to the confidential source, Petitioner provides no factual support to demonstrate that Cho had any contact with the confidential source or that Cho worked with him/her in any capacity in the course of the underlying criminal investigation. Petitioner's guess as to what Cho's "potential testimony" may have been is speculative at best. Moreover, even if Cho had testified on the subjects Petitioner claims he should have, Petitioner has failed to show a reasonable probability that the outcome of his trial would have been different. Petitioner has not established that his attorney's trial strategy was so outside the range of professional competence that he suffered prejudice as a result thereof. *See* *Wainwright*, 709 F.2d at 1445. Accordingly, he has not shown his attorney was ineffective for failing to call Cho as a witness.

Petitioner also asserts that his attorney should have called the confidential source as a witness. He contends that the confidential source would have been able to tell the court who supervised the recorded telephone calls that he/she participated in with Munoz and what agency

---

[19] As part of the underlying criminal investigation, the confidential source recorded several telephone conversations with Munoz. These calls related to Munoz wanting to purchase ten kilograms of cocaine from the confidential source. *See* CV Dkt.1, Ex. H.

he/she worked directly for. Petitioner further contends that the confidential source and Cho could have testified to the contents of the recorded conversations to substantiate the allegation that the drug deal was brokered with a Colombian national named "Lucho." Finally, Petitioner claims that the confidential source could have elaborated on the amount of cocaine Petitioner was responsible for.

Again, Petitioner's assertions as to what this witness may have testified to are vague and speculative. Even if his attorney had called the confidential source as a witness, there is nothing to suggest that the witness would have testified as Petitioner hypothesizes. Petitioner has not demonstrated that his attorney's performance was outside the bounds of reasonable professional judgment. *See Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (internal citation omitted) ("[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision"); *Chandler*, 218 F.3d at 1314 (*citing Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 2474, 91 L.Ed.2d 144 (1986) (counsel cannot be deemed incompetent for performing in a particular way in a case as long as the approach taken "might be considered sound trial strategy")). Furthermore, Petitioner has presented nothing to support the contention that any testimony provided by the confidential source would have effected the outcome of his trial in any way such that he would have been found not guilty. Thus, having failed to establish that he was prejudiced by trial counsel's alleged deficient performance, Petitioner is not entitled to relief on this claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 697.

## GROUNDS SIX AND SEVEN

In Ground Six of his motion, Petitioner claims the Government engaged in prosecutorial misconduct. Specifically, he alleges that the Government engaged in the following "unsavory acts": (1) recorded telephone conversations between Munoz and the confidential source and the substance

16

thereof were never released to Petitioner either before or during trial; (2) Special Agent Keiken outlined a "falsehood" in the criminal complaint affidavit relating to whether Munoz agreed to cooperate with authorities; (3) the Government engaged in "sentencing entrapment" in order to enhance his sentence; and (4) the Government "duped" the Court and the defense into falsely believing the drug deal was for ten kilograms of cocaine when it was really a deal of only four kilograms. In Ground Seven, Petitioner reiterates his claim that the Government failed to disclose the recorded telephone conversations between Munoz and the confidential source. He contends that such evidence was favorable to the defense and that the Government's failure to disclose this information amounts to a *Brady* violation. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.E.d2d 215 (1963) (failure of prosecutor to turn over evidence favorable to a defendant violates due process where the evidence is material to either guilt or punishment); *see also United States v. Bagley*, 473 U.S. 667, 676, 682, 105 S.Ct. 3375, 3380, 3383-84, 87 L.Ed.2d 481 (1985) (citation omitted) (impeachment evidence falls within the *Brady* rule); *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976) (prosecutor must turn over exculpatory evidence whether or not requested by the defense).   Respondent asserts that these claims are defaulted and frivolous.

Petitioner did not raise these issues on direct appeal. *See* CV Dkt. 16, Ex. A.  Section 2255 is not intended to be a substitute for direct appeal. *See Lynn v. United States*, 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) *cert. denied*, 514 U.S. 1112 (1995).   Generally, available challenges to a criminal conviction or sentence must be advanced on direct appeal or else they will be considered procedurally barred in a § 2255 proceeding. *See Cummings v. United States*, 2005 WL 1669015 at *2 (M.D. Fla. 2005) (*citing Mills*, 36 F.3d at

1055).  Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Richards*, 837 F.2d at 966 (*quoting United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981)).  Petitioner's claims of prosecutorial misconduct raised in Ground Six are non-constitutional in nature and do not provide a basis for collateral relief absent a showing that a denial of relief would result in a miscarriage of justice. *See, e.g.*, *Alicea-Torres v. United States*, 2006 WL 2849846 at *7 (D.P.R. 2006); *Hammouda v. United States*, 2006 WL 941759 at *3 (E.D.N.Y. 2006).  As a threshold matter, Petitioner has not made this requisite showing.  Accordingly, the Court finds that these claims of Petitioner's § 2255 motion are not cognizable on collateral review.

Even assuming *arguendo* that the claims raised in Ground Six were cognizable, they are procedurally defaulted and barred from consideration on collateral review.  Where a petitioner has failed to raise claims that could and should have been raised at sentencing or on direct appeal, district court review of such claims is barred absent a showing of the procedural default requirements of cause and prejudice or actual innocence. *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *United States v. Frady*, 456 U.S. 152, 167-70, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982).  To show cause for not raising a claim on direct appeal, Petitioner must show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim previously. *Lynn*, 365 F.3d at 1235 , n. 20 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  To show prejudice, Petitioner must demonstrate that "errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *Wright v. Hopper*, 169 F.3d 695, 706 (11th Cir. 1999) (internal citations omitted).  To

establish actual innocence, Petitioner must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. This means factual innocence, not mere legal insufficiency. *Bousley*, 523 U.S. at 623-24.

In the instant case, Petitioner has not made any showing of cause and prejudice. Furthermore, there is no evidence establishing that Petitioner is actually innocent. Therefore, Petitioner is procedurally barred from raising the claims made in Grounds Six in the instant § 2255 motion.

To the extent Petitioner attempts to present the claim raised in Ground Seven under the guise of a due process violation, it is nevertheless procedurally defaulted and barred from review here because he failed to raise it on direct appeal even though he was well aware of the claim at the time of trial and subsequent appeal. Before Petitioner can raise this claim for the first time in a § 2255 proceeding, he must demonstrate "cause" for his procedural default in failing to raise the issue on appeal and "actual prejudice" resulting from the error. *See Frady*, 456 U.S. at 168. Petitioner points to no external impediment that prevented him from raising this issue on appeal and thus fails to allege any cause to excuse his default. *See Lynn*, 365 F.3d at 1235, n. 20. Even if the Court were to construe his allegations as alleging such, he cannot demonstrate prejudice. *See e.g., Harris v. United States*, 9 F.Supp.2d 246, 275 (S.D.N.Y. 1998) (conclusory allegations that the Government suppressed or concealed evidence do not entitle a petitioner to relief). Petitioner's claim is wholly unsupported by any factual evidence that the Government's actions in the course of his trial were inappropriate in this regard. Accordingly, relief on Ground Seven will be denied.

## GROUND EIGHT

In his final claim, Petitioner alleges that his prior state court drug conviction[20] in Massachusetts is unconstitutional and "dischargable" [sic] in light of a recent decision by the Massachusetts Supreme Judicial Court. He claims that the decision by that court in *Commonwealth v. Colon*, 439 Mass. 519 (2003)[21] holds that "'past' guilty pleas by state criminal defendants before 1999 are '[c]onstitutionally questionable' considering that most 'plea colloquies' were either inadequate or involuntarily rendered making the conviction unconstitutional and subject to collateral challenge." *See* CV Dkt. 2. Petitioner contends, as of the time of filing the instant § 2255 motion, that he is challenging his Massachusetts conviction in the courts of that state[22] and that if that conviction is ultimately vacated, he would be entitled to resentencing by this Court on his federal convictions because he would not have a prior conviction upon which a sentence enhancement could be predicated. As relief, Petitioner requests this Court to stay a final decision on this "unripe" claim until the state challenge is resolved.

Petitioner does not seek to challenge the constitutionality of his state court conviction in this § 2255 motion nor does he ask this Court to evaluate the legality of his state conviction on any federal grounds. He has presented nothing to support a finding that his state conviction was not valid

---

[20] On December 19, 1989 Petitioner pled guilty in Middlesex Superior Court in Massachusetts to indictments charging him with trafficking in cocaine and possession of marijuana with intent to distribute it. He was sentenced on March 2, 1990 to a term of eighteen to twenty years imprisonment, with twelve years to serve. *See DiPietro v. Coalter*, 68 F.3d 455 (1st Cir. 1995).

[21] In *Colon*, the Massachusetts Supreme Judicial Court held that the defendant's deficient plea colloquy rendered his plea invalid where the plea judge failed to ascertain whether the plea was given knowingly and voluntarily. *See Colon*, 439 Mass. 519. The facts of that case relate to the plea practice of a particular judge. There is nothing in the Supreme Judicial Court's opinion to indicate that the holding in *Colon* was retroactively applicable to all other cases involving a guilty plea prior to this 2003 decision as Petitioner suggests.

[22] *See* CV Dkt. 17, Ex. A.

at the time of his sentencing to support a sentence enhancement pursuant to 21 U.S.C. § 841(b)(1)(C) or that his state conviction has since been overturned. Moreover, to the extent that Petitioner claims his state court challenge was pending at the time he filed the instant § 2255 motion, he has not advised the Court or presented any evidence to show that that case is still pending in the Massachusetts court so as to provide a basis upon which this Court could consider granting the stay Petitioner requests. Accordingly, Petitioner is not entitled to relief on Ground Eight.

To the extent that Petitioner asserts he is entitled to an evidentiary on the instant motion, such request is denied. There is no need for an evidentiary hearing as it "plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002).

### Conclusion

Accordingly, is hereby **ORDERED AND ADJUDGED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (CV Dkt. 1) is **DENIED**.

2. The Clerk shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE AND ORDERED** in Tampa, this 1st day of November, 2006.

**JAMES D. WHITTEMORE**
**United States District Judge**

SA:kaw
Copies to: Petitioner, *pro se*
 Counsel of Record

21